IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  11-cv-01145-WYD

JENNIFER MCGOWAN,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

---

**ORDER**

---

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's claim for disability insurance benefits ["DIB"] under the Social Security Act ["the Act"].  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

Plaintiff protectively filed for DIB on October 30, 2007, alleging disability beginning November 4, 2001.  (Transcript ["Tr."] 137).  Plaintiff's application was denied (Tr. 86), and she requested a hearing before an ALJ.  (*Id.* 89.)

An administrative hearing was held on August 17, 2009.  (Tr. 44-83.)  Plaintiff, born on July 29, 1970, was 39 years old at the time of the hearing.  (*Id.* 51, 137.)  She alleged that she became disabled on November 4, 2001, due to "bad back, chronic low back pain, annular tears", which caused the inability to lift more than 3 pounds and

limited standing, walking and sitting. (*Id.* 183, 208). The alleged disability occurred while Plaintiff, as a certified nurse's assistant, was lifting a patient. The patient went backwards, twisting Plaintiff's back, causing an acute onset of low back pain and worsening into the SI joints. (*Id.* 248, 458.).

The administrative law judge ["ALJ"] issued a decision on September 28, 2009, finding Plaintiff not disabled. (Tr. 19-27.) The ALJ found at step one that Plaintiff last met the insured status requirements of the Act on September 30, 2008. (*Id.* 21.) She further found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of November 4, 2001, through her date last insured ["DLI"] of September 30, 2008. (*Id.*)

At step two, the ALJ found that Plaintiff had the severe impairment of degenerative disc disease. (Tr. 21.) At step three, she found through the DLI that Plaintiff did not have an impairment or combinations of impairments that met or medically equaled one of the listed impairments. (*Id.* 22.)

The ALJ then assessed Plaintiff's residual functional capacity ["RFC"], finding that Plaintiff could perform light work as defined in 20 C.F.R. 404.1567(b). (Tr. 22-26.) She also found that Plaintiff would need a sit/stand option and is limited by occasional bending, stooping, and crouching. (*Id.* 22.)

As step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 26.) She noted that Plaintiff was a younger individual age 18-44, has at least a high school education and is able to communicate in English. (*Id.*) Considering Plaintiff's age, education, work experience, and RFC, the ALJ found at step five that

jobs existed in significant numbers in the national economy that Plaintiff could perform. (*Id.*) Accordingly, the ALJ concluded that Plaintiff was not under a disability, as defined in the Act, at any time from November 4, 2001, through September 30, 2008. (*Id.* 27.)

Plaintiff requested review by the Appeals Council, which was denied on February 25, 2011. (Tr. 9.) Plaintiff timely requested judicial review, and this appeal followed. Plaintiff alleges that the ALJ erred because she (1) violated the medical opinion standards; (2) failed to properly determine Plaintiff's RFC; and (3) did not establish her burden at step five. Defendant maintains in response that substantial evidence of record supports the ALJ's decision.

II. <u>ANALYSIS</u>

    A. <u>Standard of Review</u>

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for

reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

      B.     <u>Whether Reversal of the ALJ's Decision is Appropriate</u>

          1.     <u>Whether the ALJ Erred in Evaluating the Medical Evidence</u>

Plaintiff first argues that the ALJ's decision failed to apply the correct legal standards in the evaluation of medical opinion evidence, and that the ALJ failed to give controlling weight to the opinions of Plaintiff's treating physician. I agree that the ALJ erred in her evaluation and weighing of the medical evidence. This requires reversal of the ALJ's decision and a remand for further factfinding, as discussed below.

The ALJ stated as to the opinion evidence that "the only evaluation unrelated to the worker's compensation process was the consultative examination" of Dr. Mustafa, which she gave "substantial weight" to. (Tr. 25.) She also discussed a functional capacity examination ["FCE"] conducted on September 30, 2003, which I discuss in more detail below. (*Id.*) As to Dr. Schwender who the ALJ noted was a treating physician, the ALJ gave his opinions "little weight" "because he did not perform the FCE [which he offered an opinion about] or offer an opinion considering the purposes of Title II disability and functional capacity." (*Id.*)

I note that treating physician Dr. Schwender diagnosed Plaintiff with "Chronic discogenic low back pain and SI dysfunction." (Tr. 569, 562.) He found for worker's compensation purposes that Plaintiff had an impairment related to the structural injury of her back and an impairment for decreased range of motion of her lumbar spine, and stated as to Plaintiff's physical capacity that she "has a five pound max lift limit, a three

-4-

pound repetitive lift and carry limit", no pushing, pulling or kneeling, and she should be allowed to alternate sitting, standing and walking as needed for back comfort. (*Id.* 562-63.) He noted that those restrictions "are certainly safe, they probably do not represent the patient's safe maximal physical capacity", and referred to the FCE performed on September 30, 2003 "for a complete set of permanent restrictions." (*Id.* 563.) While the ALJ stated that she gave Dr. Schwender's opinions "little weight", she obviously gave them no weight as she did not incorporate his restrictions into the RFC, did not consider or discuss whether the diagnosed SI dysfunction was a severe impairment, and rejected any symptoms related to pain. I find that the ALJ erred in her evaluation of Dr. Schwender's opinions for two reasons.

      First, I agree with Plaintiff that the reasons given for rejecting Dr. Schwender's opinions were not legitimate. *See Goatcher v. United States Dept. of Health and Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1994) ("The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled."). Contrary to the ALJ's findings, a physician can certainly render opinions from his or her review of an FCE, regardless of whether the doctor himself performed it. Here, Dr. Schwender as a treating and examining physician was obviously familiar with Plaintiff's impairments and could thus determine whether the restrictions in the FCE were appropriate. Further, a physician's opinions about a claimant's impairments and the severity thereof are relevant and must be taken into account by an ALJ regardless of whether the physician opined about functional capacity or "the purposes of title II disability". (Tr. 25.) This is particularly true if the physician is, as here, a treating

physician. Indeed, a treating physician's opinion may be rejected "'outright only on the basis of contradictory medical evidence and *not due to [the ALJ's] . . .own credibility judgments, speculation, or lay opinion*'". *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (emphasis in original) (quotation omitted).

Second and more importantly, the ALJ failed to apply the treating physician rule to Dr. Schwender's opinions. The treating physician rule requires that the ALJ "complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). The initial determination the ALJ must make is whether a treating physician's medical opinion is "conclusive, i.e., is to be accorded 'controlling weight,' on the matter to which it relates." *Id*. "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "Even if a treating opinion is not given controlling weight, it is still entitled to deference; at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* "If this is not done, a remand is required." *Id.*

The ALJ's decision makes no reference to this standard, nor did she undertake the two-step analysis required as to Dr. Schwender's opinions. She also did not indicate that she gave his opinions deference or that she weighed his opinions using all of the relevant factors. *Langley v. Barnhart*, 373 F.3d 1116, 1120 (10th Cir. 2004). This

was reversible error. In light of this, the Commissioner's argument that Plaintiff simply is asking the Court to reweigh the opinion evidence is specious. *See Krauser*, 638 F.3d at 1330 (holding that the "post-hoc efforts of the Commissioner. . . to work through the omitted second step for the ALJ are prohibited. . .").

The Commissioner also argues, however, that Dr. Schwender's opinion regarding Plaintiff's RFC was on an issue reserved to the Commissioner and, therefore, was not entitled to any special significance. Again, this argument is without merit. The Tenth Circuit has made clear that where a treating physician gives specific work-related functional limitations, those opinions are medical opinions entitled to controlling weight. *Krauser*, 638 F.3d at 1330-1332. They cannot be rejected on the basis that they are on an issue reserved to the Commissioner. *Id.* at 1332 ("[T]he medical findings as to work-related limitations would, if accepted, impact the ALJ's determination of RFC—they always do, because that is what they are for—but that does not make the medical findings an impermissible opinion on RFC itself").

I also find that the ALJ erred by ignoring other medical evidence and opinions by medical providers in the file, including Drs. Lazar, Bissell, McMullen, Lippert, and Sharon. Further, she erred by failing to discuss the weight she assigned to their opinions and the reasons, if any, that she rejected them. *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (the ALJ is required to consider the opinions of all the medical providers and to provide specific, legitimate reasons if she rejects them). Indeed, the Tenth Circuit has made clear that "in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [s]he

chooses not to rely upon, as well as significantly probative evidence [s]he rejects. *Clifton v. Chater*, 72 F.3d 1007, 1010 (10th Cir. 1996).

These other physicians' opinions and findings provide substantial support for Dr. Schwender's diagnoses, and relied on objective findings based on clinical and diagnostic techniques. (*See, e.g.*, Tr. 225-26 – Dr. Bissell's diagnosis of low back pain and the lack of any further treatment for same; 251 – Dr. Sharon's assessment of back pain, acute and chronic; 263 - Dr. Lippert's findings of ""maximal tenderness midline 4-5, 5-1 without radiation" and that Plaintiff was "exquisitely tender midline 5-1" and recommendation of a diskography; and 304 – Dr. Lazar's finding that "on physical examination, [Plaintiff] had obvious mechanical low back symptoms with mechanical back pain reproduced with forward flexion and extension, as well as with bilateral straight leg raising".) Also, given the number of visits that Plaintiff made to Dr. Bissell's office (*id.* 225-47), he may have been a treating physician whose opinions needed to be evaluated under the treating physician rule. This also needs to be addressed on remand.

The ALJ did discuss in passing the opinions of Dr. Bergland, who conducted an independent medical examination of Plaintiff. (Tr. 25.) Dr. Bergland diagnosed "degenerative disk disease L3-4, L4-5, L5-1", "HNP L4-5, L5-S1", "Annular tear L3-4, L4-5, L5-S1" and "Sacroiliitis, bilateral", and opined that Plaintiff "should be allowed continued maintenance care for pain management under Dr. Schwender's direction." (*Id.* 530-34.) The ALJ stated that she gave "no weight" to Dr. Bergland's opinions because a functional capacity opinion was not found in the report. (*Id.* 25.) This was

not a legitimate basis to discount Dr. Bergland's opinions, as he made medical findings about Plaintiff's impairments. An ALJ errs in rejecting medical findings in the absence of conflicting evidence. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). Further, although the ALJ stated that she considered Dr. Bergland's assessment, she did not explain why the other impairments he noted were not addressed by her at step two. While this may be harmless error given the fact that the ALJ found a severe impairment and continued on to other steps, *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008), this issue should be properly evaluated on remand since the case is being remanded.

The ALJ also discussed the FCE in the record (Tr. 337-342) and appeared to reject it (*id.* 25), although this is not clear from the record. I find that the reasons the ALJ chose to disregard the FCE are not legitimate. First, she stated that it was performed by a physical therapist and not a physician. (*Id.*) However, an FCE is an integral part of the RFC evaluation process, and the ALJ erred by not taking this into consideration. Also, even though a physical therapist is not an "acceptable medical source", his or her opinions and findings still must be considered and weighed in determining "the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939, at * 2 (2006).

The ALJ also stated that the "results [of the FCE] were questionable as [Plaintiff] was considered to have only put forth borderline submaximal effort", and that Dr. Schwender "considered the results inaccurate and did not demonstrate what the claimant was fully able to do here." (Tr. 25.) That is not accurate. Dr. Schwender

indicated his acceptance of the FCE, at least in part, by referring to the FCE "for a complete set of restrictions" and discussing the results of the FCE with Plaintiff.  (*Id.* 563.)  To the extent there was any confusion about Dr. Schwender's opinion as to validity of the restrictions in the FCE, the ALJ should have contacted Dr. Schwender for clarification on the issue.  *See Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008) (the ALJ generally must recontact the claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled pursuant to 20 C.F.R. § 404.1512(e)). Finally, the FCE could not be disregarded simply because it was done as part of a worker's compensation proceeding (*id.* 25), since the restrictions noted in the FCE are equally relevant to the social security determination.

Instead of giving any weight to the opinions of treating physician Dr. Schwender or the other medical providers discussed above, the ALJ chose to give "substantial weight" to the opinions of consultative examiner Dr. Mustafa.  (Tr. 25, 549-552.)  Since I am remanding this case to the Commissioner for the proper weighing of the medical evidence, including the opinions of the treating physician to determine if they are entitled to controlling weight, will obviously require the ALJ to reweigh Dr. Mustafa's opinion as well.  I note, however, several important things for the ALJ to keep in mind when reevaluating that medical opinion.

First, the ALJ appeared to give great weight to the lack of objective findings noted by Dr. Mustafa.  She stated in that regard that Dr. Mustafa diagnosed Plaintiff "with low back pain of questionable etiology" after noting that an X-ray from January 14,

-10-

2008 as part of the consultative exam was normal. (Tr. 25.) She also noted Dr. Mustafa's statement that Plaintiff's low back pain was "not correlated with any objective findings." (*Id.*) Dr. Mustafa's statements on the issue of lack of objective findings do not, however, allow the ALJ to ignore the other substantial record in the file that did indicate objective findings, including not only the MRI of Plaintiff's lumbar spine and diskography, but also the examinations of Plaintiff in the record by the other physicians. Indeed, Dr. Mustafa specifically noted that no records were submitted for his review. (Tr. 549.) Thus, his opinions were rendered in a complete vacuum, without the benefit of the substantial objective evidence in the record that supported Plaintiff's complaints of pain. I also find errors with the ALJ's RFC assessment as it relates to Dr. Mustafa, which I address in the next section.

Based upon the foregoing, I find that the ALJ's weighing of the medical evidence and decision to give substantial weigh to the opinion of the consultative examiner is not supported by substantial evidence. This requires a remand of the case to the Commissioner.

### 2. Whether the ALJ Erred in Assessing Plaintiff's RFC

RFC is "'a term which describes the range of work activities the claimant can perform despite his impairments.'" *Southard v. Barnhart*, No. 02-7102, 2003 WL 21733145, at *2 (10th Cir. July 28, 2003) (unpublished) (quotation omitted).[1] The ALJ must evaluate a claimant's physical and mental RFC for use in steps four and five of the

---

[1] I cite this and the other unpublished opinions in this Order because the cases have persuasive value with respect to material issues in the case. 10th Cir. R. 32.1(A).

sequential evaluation process, and must make specific findings regarding same. 20 C.F.R. § 416.920(e); *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Lawton v. Barnhart*, No. 04-1050, 2005 WL 281378, at *10 (10th Cir. Feb. 7, 2005) (quoting SSR 96-8p, 1996 WL 374184, at *7). "A function-by-function evaluation is necessary in order to arrive at an accurate RFC. *Id.* (quoting SSR 96-8p at *3-4).

In developing the RFC, the ALJ must consider the limiting effects of all the claimant's impairments. 20 C.F.R. § 416.945; *see also Bowman*, 511 F.3d at 1272-73. In doing so, the ALJ "must address both the remaining exertional and nonexertional capacities of the individual." *Southard*, 2003 WL 21733145, at *3. "The ALJ's findings must . . .be specific because the hypothetical questions submitted to the VE must state the claimant's impairments 'with precision.'" *Armer v. Apfel*, Nos. 99-7128, 98-CV-424, 2000 WL 743680, at *2 (June 9, 2000) (unpublished) (quotation omitted).

I find that the RFC determination in this case is not supported by substantial evidence. It appears the ALJ based her RFC finding largely on Dr. Mustafa's consultative examination (Tr. 25-26), although it is unclear why the ALJ decided that Plaintiff was limited to light work since Dr. Mustafa did not render an opinion as to that. Dr. Mustafa opined on the issue of Plaintiff's functional ability that she was "unlimited in the number of hours she could sit, stand and walk in an eight-hour day but should be given the option of frequent rests considering her subjective low back pain." He further

found that while Plaintiff was "unlimited in the amount of weight she could carry, she should be limited to occasional bending, stooping and crouching." (*Id.* 551-52.) The ALJ adopted Dr. Mustafa's findings regarding Plaintiff's functional capacity with one exception. She did not include his finding that Plaintiff should be given the option of frequent rests considering her subjective low back pain. The ALJ may not, however, "pick and choose" among medical findings, using portions of a report that is favorable to her position while ignoring other portions of the report. *Carpenter*, 537 F.3d at 1265.

Further, the reason given by the ALJ to completely discount Plaintiff's complaints of pain are not legitimate. The ALJ stated on that issue that Plaintiff's "subjective complaints of pain have not been confirmed by objective findings suggesting the claimant is inflating her allegations of pain", referencing Dr. Mustafa's examination. (Tr. 24.) However, this finding appears to be inconsistent with the ALJ's finding that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." (*Id.* 23.) In other words, the ALJ found that Plaintiff had a pain producing impairment, which had to be substantiated by objective medical evidence. *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987) If Plaintiff's degenerative disk disease could reasonably be expected to cause pain, the ALJ was required to conduct a full pain analysis under *Luna*, considering the appropriate factors and linking her conclusions to the evidence. The ALJ erred by not conducting this analysis or even referencing the factors she was required to consider under Luna.

Moreover, a lack of objective findings do not allow an ALJ to simply reject complaints of pain. SSR 96-7p, 1996 WL 374184, at *1 (July 2, 1996). Further,

Plaintiff's subjective complaints of pain have been confirmed in this case by objective findings. The record is replete with findings documenting Plaintiff's pain. For example, emergency room physician Dr. Sharon saw Plaintiff when she went to the hospital complaining of persistent and chronic back pain, "even despite being seen by her primary care physician last week." (Tr. 251.) He found on physical examination that she had "tenderness in the low lumbar spine in the midline." (*Id.*) Dr. Bissell diagnosed back pain that could not be helped with further medical treatment. (*Id* 225-26.) Dr. Lazar found on examination that Plaintiff had tenderness of the lower lumbar spine and pain upon examination of the lumbar range of motion and concluded that Plaintiff had "obvious mechanical low back symptoms." (*Id.* 302-304.) Dr. Bergland made several diagnoses that support Plaintiff's complaints of pain, and found that Plaintiff should continue to be should be allowed continued maintenance care for pain management under Dr. Schwender's direction. (*Id.* 533.) The diagnoses of pain were also supported by objective findings from the MRI of the lumbar spine, showing mild to moderate degenerative changes, bulging disks, annular tears as well as other issues (*id.* 220-21, 239, 263), and the diskography showing an abnormal exam at L3-4, L4-5, and L5-S1 with posterior disk fissuring and posterior transannular leakage of contrast material, with "reproduction of severe concordant back pain". (*Id.* 285, 289.)

It is hard to believe from the foregoing evidence that the ALJ so cavalierly dismissed Plaintiff's complaints of pain in assessing Plaintiff's RFC. Every doctor that saw Plaintiff agreed that she had pain, and the many treatments Plaintiff tried to treat the pain were unsuccessful. Indeed, while the ALJ noted as a basis to reject Plaintiff's

complaints of pain that "the doctor overseeing her pain and physical therapy appeared confounded by her continued complaints of pain considering all the therapy she completed", and that he was "at a loss of any further treatment for her", this actually supports Plaintiff's complaints of pain as it shows that her pain continued despite the many types of treatment she tried.  The ALJ erred by making speculative inferences about what the medical evidence means or second guessing the judgment of the medical doctors.  *See McGoffin*, 288 F.3d at 1252.  Further, the ALJ's credibility judgments "by themselves 'do not carry the day and override the medical opinion of a treating physician that is supported by the record.'"  *Id.* (quotation omitted); *see also Romero v. Astrue*, No. 06-6305, 2007 WL 2110899, at *2 (10th Cir. 2007) (unpublished) ("Dr. Haddock's conclusions concerning Ms. Romero's pain and limitation. . . find support in the treatment records and therefore could not be cursorily dismissed. . .").

      The ALJ also improperly relied on statements by some of the physicians that Plaintiff might make progress in the future or improve over time (Tr. 23-24), opinions which were speculative as they dealt with future events which were not borne out by the record.  Further, the ALJ erred by selectively applied the evidence as to her RFC and credibility findings, citing only isolated portions of the record which she felt supported her findings and ignoring other evidence.  *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004).

      For example, the ALJ stated that Plaintiff "made progress in her physical therapy" (Tr. 23), when in fact Plaintiff was released from this therapy while still experiencing significant back pain.  (*Id.* 296, 343, 435, 533, 543.)  The ALJ also pointed to alleged

inconsistencies in regards to pain medication and/or the frequency of pain, and stated that the medical records show Plaintiff "was resistant to pain killers, even refusing to follow recommended advice, on occasion." (*Id.* 23-24.)  The ALJ ignored, however, the substantial evidence of record showing that Plaintiff tried the many treatments and medications proposed for her pain, and that they were not effective in alleviating her pain.  (*See id.* 225 – Dr. Lazar's finding that Plaintiff "has tried multiple modalities of care in the past including anti-inflammatory medicine, narcotic pain medicine, physical therapy, pool and Wellness program, epidural steroid injections, all of which have failed to provide any significant long-lasting relief of her symptoms"; 533 – Dr. Bergland's notation that Plaintiff's "course of treatment is extensively documented" and that Plaintiff "faile[d] to respond to conventional treatment modalities" including physical therapy and EDSI injections.[2]

Finally, the ALJ relied on Plaintiff's daily activities, noting that they "demonstrate a higher level of functioning then her subjective complaints of pain might allow."  (Tr. 24.)  She noted that Plaintiff walked as a hobby and other activities such as the fact she spends "time with her children, watching her son's softball games and going to the park."  (*Id.* 23.)  She also noted that Plaintiff said "she gets the kids up, makes breakfast, does the dishes, does the laundry. . ." and "does not require assistance with her personal care."  (*Id.* 24.)  An ALJ may not, however, "rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain."  *Thompson v.*

---

[2]  Further, Plaintiff states that the discrepancy in reported medication was clarified by the Peak Vista records prescribing Flexeril and Vicodin.  (Tr. 7, 23, 590, 595.)

*Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993); *see also Martinez v. Astrue*, No. 10-5097, 2011 WL 1549517, at *8-9 (10th Cir. April 26, 2011).

The ALJ also stated that while Plaintiff "testified during the hearing, that her children help her with all household tasks, she did not qualify all her daily activities on the pain questionnaire." (Tr. 24.) However, other records in the file noted that Plaintiff was "avoiding housework." (*Id.* 386.) Plaintiff also reported that her family helps her with her duties a lot on her "Function Report" form. (*Id.* 196). Again, the ALJ improperly selectively applied the evidence on this issue, resulting in the fact that her credibility finding is not linked to substantial evidence. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("'[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings'") (quotation omitted).

Based on the foregoing, I find that the ALJ's findings regarding RFC, Plaintiff's pain and credibility are not supported by substantial evidence. The ALJ must reassess Plaintiff's RFC and Plaintiff's credibility on remand, after having properly weighed all the medical evidence in the record. In assessing RFC, she must consider the combined impact of Plaintiff's impairments, regardless of whether they are severe. I also find that the ALJ should assess the evidence in the record showing the need for Plaintiff to lie down or take rests during the day (Tr. 72-74, 551), insomnia (*id.* 592, 232), medication side-effects (*id.* 70), good days and bad days (*id.* 55, 73), and the need to alternate sitting and standing with walking (*id.* 75, 563, 569). The ALJ must also "provide a narrative discussion describing how the evidence supports" her RFC determination.

*Lawton*, 2005 WL 281378, at *10.  Finally, the ALJ must consider Plaintiff's "ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis", and explain how any material inconsistencies or ambiguities in the record were considered and resolved.  *Id.*

### 3. Whether the ALJ Erred at Step Five

The errors in the evaluation of medical opinion evidence, RFC and credibility also impact the step-five evaluation, which must be reassessed on remand after the evidence is properly weighed and evaluated.  I note for purposes of remand that testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Commissioner's decision.  *Gay v. Sullivan*, 986 F.2d 1336, 1340 (10th Cir. 1993).

### III. CONCLUSION

Based upon the foregoing, I find that the ALJ did not properly weigh the medical evidence and that errors were made in the RFC and credibility assessment.  Accordingly, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

Dated September 24, 2012

                                        BY THE COURT:

                                        s/ Wiley Y. Daniel
                                        Wiley Y. Daniel
                                        Chief United States District Judge